PATRICK J. WHALEN, ESQ.
ATTORNEY AT LAW, LLC
109 S. Warren Street
P.O. Box 23653
Trenton, New Jersey 08608
Phone: 609.393.6970
Fax: 609.393.6971
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RITA ROE (Fictitious name to protect her identity), | : | CASE NO.: |
| Plaintiff, | : | |
| v. | : | |
| LAKEWOOD BOARD OF EDUCATION (LBOE); LBOE PRESIDENT MOSHE BENDER, in his official capacity; LBOE ATTORNEY MICHAEL INZELBUCH, in his official capacity; SUPERINTENDENT LAURA WINTERS, in her official capacity; SUPERVISOR OF RELATED SERVICES ADINA WEISZ, in her official capacity; SUPERVISOR OF STEM AND CHAPTER 192/ 193 MALKA SPITZ-STEIN, in her official capacity; JOHN & JANE DOES (1-20) (fictitious names); and XYZ CORPS. (1-10) (fictitious names), | : : : : : : : : : : : | **COMPLAINT** |
| Defendants. | : : | |

The Plaintiff, Rita Roe, through her attorney, Patrick J. Whalen, Esquire, by way of Complaint against the Defendants Lakewood Board of Education ("LBOE"), Moshe Bender, LBOE President, in his official capacity; LBOE Attorney Michael Inzelbuch, in his official capacity; Superintendent Laura Winters, in her official capacity; Supervisor of Related Services Adina Weisz, in her official capacity, Supervisor of STEM and Chapter 192/193, Malka Spitz-Stein, in her official capacity, states the following:

## I.    NATURE OF THE CLAIMS

1.    This civil action arises out of Plaintiff being wrongfully terminated after she disclosed, complained about and/or objected to unlawful and unethical work practices, as well as her objections to the unlawful conduct of the individual Defendants.  Plaintiff asserts violations of the New Jersey Conscientious Employee Protection Act, violation of her First Amendment rights, and other constitutional, statutory, and common law claims.

## II. JURISDICTION

2.    Jurisdiction over Plaintiff's claims is conferred on this Court based on 42 U.S. §1983, as well as 28 U.S.C. §1331 and §1332.  The matter in controversy exceeds $75,000.00.

## III. VENUE

3.    Venue is proper within the New Jersey District Court pursuant to 28 U.S.C. 1391(c)(1) based on the fact that Defendants are located in that judicial district.

## IV.  PARTIES

4.    Plaintiff, "Rita Roe" (fictitious name designated to protect Plaintiff's identity), is an adult female and a resident of Lakewood, New Jersey.

5.    Defendant, the Lakewood Board of Education, is an entity existing under the laws of the State of New Jersey, with official offices located at 200 Ramsey Avenue, Lakewood, New Jersey 08701.

6.    Upon information and belief, at all times relevant to this Complaint, Defendant Moshe Bender served as Board President and Board Member of the Lakewood Board of Education.  Upon further information and belief, Defendant Moshe Bender currently resides at 216 Private Way, Lakewood, New Jersey 08701.

2

7.     Upon information and belief, at all relevant times herein, Defendant Michael Inzelbuch, Esq., served as the Board Attorney for Defendant the Lakewood Board of Education. Upon further information and belief, Defendant Michael Inzelbuch's law office is located at 1340 West County Line Road, Lakewood, New Jersey 08701.

8.     Upon information and belief, Defendant Laura A. Winters currently serves as Superintendent of Schools for Defendant the Lakewood Board of Education. Upon further information and belief, Defendant Laura A. Winters currently resides at 68 Pilot Drive, Brick, New Jersey 08723.

9.     Upon information and belief, Defendant Adina Weisz currently serves as Supervisor of IDEA and Related Services for Defendant the Lakewood Board of Education. Upon further information and belief, Defendant Adina Weisz currently resides at 854 Woodland Drive, or, 1574 Alamitos Drive, Lakewood, New Jersey 08701

10.     Upon information and belief, Defendant Malka Spitz-Stein currently serves as Supervisor of STEM and Chapter 192/193 for Defendant the Lakewood Board of Education. Upon further information and belief, Defendant Malka Spitz-Stein currently resides at 1 Truman Avenue, Lakewood, New Jersey 08701.

11.     Defendants LBOE, Moshe Bender, Michael Inzelbuch, Laura Winters, Adina Weisz, and Malka Spitz-Stein, hereinafter are referred to as the "LBOE Defendants".

12.     Defendants John & Jane Does (1-20) ("John Does") are presently unidentified individuals, including BOE Members and/or employees or representatives of Defendant LBOE, that were involved in the wrongful and/or retaliatory conduct, as well as the adverse employment acts, at issue in this Complaint.  John & Jane Does (1-20) also include any outside individuals who may have interfered with and/or attempted to interfere with Plaintiff's employment. Plaintiff reserves the right to amend the Complaint to include these parties should their identities be revealed in discovery.

13.     Defendants XYZ Corps. (1-10) ("XYZ") are presently unidentified business entities or public agencies that interfered with Plaintiff's employment with the Lakewood School District and/or otherwise were involved in the retaliatory conduct and adverse employment acts directed at Plaintiff and/or at issue in this action. XYZ Corps. (1-10) also includes any outside entities who may have interfered with Plaintiff's employment.   Plaintiff reserves the right to amend the Complaint to include certain entities or corporations should their identities be revealed in discovery and should discovery and investigation reveal that they played a direct and/or meaningful role in the retaliation against her, and/or in the adverse employment acts taken against her described herein.

14.     At all times relevant to this Complaint, the LBOE Defendants, and/or John/Jane Does (1-20), acted under the color of their position and in their capacity as Plaintiff's Supervisor and within the apparent scope of said authority and individual aided, abetted uncited, compelled and/or coerced the performance of the herein referenced misconduct, including the unlawful practices prohibited by CEPA.

4

15. Accordingly, the LBOE Defendants and/or John/Jane Does (1-20) and/or XYZ Corps. (1-10) and all other unnamed employees, agents and/or representatives of the Defendant employer are individually responsible for their actions in violation of CEPA and the Defendant employer is responsible for the actions of these individually named Defendants and all other unnamed employees, agents and/or representatives of the Defendant employer and the damages sustained by Plaintiff as a result thereof.

16. At all times relevant to this Complaint, the LBOE Defendants, and/or John & Jane Does (1-20), other employees, agents and/or representatives of the Defendant employer, were members of upper management, acted under the color of his/their positions in his/their capacity as Plaintiff's direct and indirect Supervisors and within the apparent scope of that authority. These individual Defendants and other members of upper management of Defendant Lakewood Board of Education engaged in actual participation and/or willful indifference regarding the retaliatory and hostile treatment of the Plaintiff.

## II. PERTINENT BACKGROUND FACTS.

### (A) Plaintiff's Background.

17. On July 24, 2013, the Lakewood Board of Education offered the position of Grants Facilitator, effective August 26, 2013 through June 30, 2014, to Plaintiff Rita Roe, and she accepted.

18. Plaintiff was a loyal, hard-working, and very capable and productive employee for the Lakewood Board of Education for nearly 6 years.

19. Throughout her time of employment at the Lakewood Board of Education, Plaintiff's Supervisors provided her with good performance reviews. She had an excellent,

unblemished work history with the LBOE.

20.    On May 14, 2019, the LBOE listed Plaintiff for reappointment and approved renewal of her position. This was placed on the Certified LBOE Agenda.

21.    There were no problems or concerns with Plaintiff's work and none of the LBOE Representatives, including high-ranking decision makers and policy makers (including the individual named Defendants), expressed any hesitation with Plaintiff's reappointment and/or her continued employment with the District.

### (B) The May 19, 2019 Public Meeting.

22.    On May 19, 2019, Plaintiff was invited to, and attended, a "pre-consultation" meeting. This was a public meeting.

23.    Defendants Michael Inzelbuch, Superintendent Laura Winters, Supervisor of Related Services Adina Weisz, and Supervisor of STEM and Chapter 192/193 Malka Spitz-Stein were all in attendance, among others.

24.    At the meeting, Plaintiff was asked by LBOE General Counsel, Defendant Inzelbuch, to describe her current job responsibilities.

25.    Plaintiff explained that she performed observations in connection with Grants that were being provided in the non-public schools. When asked which Grants she performed observations for, Plaintiff explained that she performed observations for 192/193 and IDEA Grants.

26.    Defendant Michael Inzelbuch, at that same meeting, then asked Plaintiff whether or not she performed observations for Title I Grants*.

---

* Title I, Part A (Title I) of the Elementary and Secondary Education Act, as amended by the Every Student Succeeds

6

27. Plaintiff disclosed and advised that she did not specifically perform those Title I observations.

28. In response, Defendant Michael Inzelbuch asked why Plaintiff was not observing Title I Grants.

29. Plaintiff went on to disclose and explain that she was explicitly and specifically told not to perform observations of Title I Grants.

30. Plaintiff disclosed and explained that her Supervisor, Defendant Malka Spitz-Stein, had instructed her to not perform observations of Title I Grants.

31. Defendant Michael Inzelbuch then asked Plaintiff if there was a reason given.

32. Plaintiff responded and explained that her Supervisor, Defendant Malka Spitz-Stein said that it had something to do with the outside vendor *Tender Touch Educational Services.*

### (C) The LBOE Defendants' Informal Practice of Not Conducting Title I Grant Observations.

33. At some point in early 2018, Plaintiff's Supervisor, Defendant Spitz-Stein, clearly at the urging or request of others, put into effect the informal (and, as it turned out unethical and illegal) "practice" of no observations to be conducted with respect to Title I Grants.

34. Plaintiff was very uncomfortable with this new, highly unusual informal practice that Defendant Spitz-Stein was instructing Plaintiff to start regarding no longer performing Title I observations.

35. Plaintiff had asked Defendant Malka Spitz-Stein to confirm with Defendant Laura Winters, that this was acceptable. Defendant Malka Spitz-Stein agreed that she would.

---

Act (ESEA) provides financial assistance to local educational agencies (LEAs) and schools with high numbers or high percentages of children from low-income families to help ensure that all children meet challenging state academic standards. https://www2.ed.gov/programs/titleiparta/index.html

36.     Plaintiff had no reason to believe that she would not.

37.     Therefore, even though she felt very uncomfortable with this informal practice, Plaintiff felt she had no choice but to follow Defendants', including her Supervisor's (Defendant Spitz-Stein) instructions.

38.     The LBOE Defendants informal "practice" of not performing observations for Title I Grants within the Lakewood School District was effectively "overriding" the express, stated public policies, laws (both State and Federal) and regulations pertinent to Title I Grants.

39.     Existing State and LBOE policies, as well as relevant laws, DOE regulations and policies, required that observations be performed by the LBOE with respect to all Grants - - including 192/193 Grants, IDEA Grants, and Title I Grants.

### (D) The LBOE Defendants Retaliate Against Plaintiff As A Direct Result of Her Protective Activity.

40.     Immediately after Plaintiff made this disclosure and publicly confirmed this unethical and unlawful "informal practice", the air in the meeting room changed.

41.     As Plaintiff was leaving that meeting, she heard Defendant Inzelbuch state: "*You know there will be terminations or transfers.*"

42.     Plaintiff would never be treated the same at work by the LBOE Defendants, including her Supervisors and/or those in charge of the District.

43.     For example, as a result of Plaintiff's honest response and courageous disclosure, oddly, Defendant LBOE's General Counsel, Defendant Inzelbuch, immediately advised Defendant Superintendent Winters to write a new Job Description for Plaintiff. The retaliation had begun.

8

44.    Later that same evening, Plaintiff received from Defendant Superintendent Laura Winters the new Job Description, with a new title, qualifications and job responsibilities.

45.    This new Job Description was to be effective immediately.

46.    All Program Supervisors were copied on Defendant Winters' email.

47.    The next morning, Plaintiff requested from her Supervisor, Defendant Adina Weisz, the IDEA Supervisor, additional information needed to observe the services specified on her "new job description."

48.    Plaintiff received an email response stating that they would meet on May 22, 2019.

49.    On May 22, 2019, Plaintiff attended that meeting with her Supervisor, Defendant Malka Spitz-Stein, and Defendant Supervisor Adina Weisz.

50.    At that May 22nd meeting, it was Plaintiff's understanding and expectation that only her "new job description" would be discussed.

51.    However, in addition to the discussion of the "new job description", Plaintiff was questioned by Defendant Weisz as to why she was not performing observations with respect to Title I Grants and services and when Title I observations had been discontinued.

52.    Plaintiff provided an explanation to Defendant Weisz.  Part of that explanation included the following background factual allegations:

(a)    On or around February 8, 2018, after observing a Title I counseling session, her Supervisor, Defendant Spitz-Stein, had approached Plaintiff and advised her that a Vendor (*Tender Touch Educational Services*) had called and complained that "the class was disrupted" by Plaintiff;

(b)    In response to that baseless complaint, Plaintiff had explained to Defendant Spitz-Stein that it was not a class, but rather, it was a session with 1 individual student;

9

(c)    Plaintiff also explained to Defendant Malka Spitz-Stein that she needed to request information about that student's schedule, as the one provided by the Vendor (*Tender Touch*) did not have the student scheduled for service at that time;

(d)    In response to Plaintiff's explanation, Defendant Spitz-Sein changed the story and indicated that Plaintiff had a conversation with the student;

(e)    Plaintiff assured her that she had not had a conversation with the student;

(f)    Defendant Spitz-Stein then stated that Plaintiff had made eye contact with the student;

(g)    Plaintiff assured her that she had not made eye contact with the student;

(h)    It was at that point that Plaintiff realized a complaint was not truly made claiming that a "class was disrupted" by Plaintiff. This was a baseless complaint and she told her Supervisor, Defendant Spitz-Stein, exactly that;

(i)    It was also at that point that Defendant Malka Spitz-Stein had put into effect the practice of no longer performing Title I observations and instructed Plaintiff as such;

(j)    Up to that point, Plaintiff had routinely and regularly performed Title I observations;

(k)    As stated above, Plaintiff was uncomfortable with this new practice and asked Defendant Spitz-Stein to verify and confirm that this was acceptable with Defendant Laura Winters;

(l)    Subsequent to the instruction of Defendant Malka Spitz-Stein, scheduled Title I observations began to gradually disappear from Plaintiff's Assignment Sheets.

53.    On that same date, May 22, 2019, Plaintiff received correspondence from Defendant Winters that a meeting had been scheduled for May 24, 2019 to discuss Plaintiff's new job responsibilities. That meeting was supposed to be with Plaintiff and Defendants Winters and Inzelbuch.

54.    In addition to that May 22nd correspondence, Defendant Winters sent a RICE Notice to Plaintiff.

10

55.     The LBOE Defendants made it crystal clear that this May 24ᵗʰ meeting was arranged and held in direct response to the disclosures, concerns, and statements that Plaintiff had made at the May 19, 2019 Public Meeting about the unspoken, but ongoing practice by the LBOE Defendants, of there being no observations performed as to Title I services and/or related Grants.

56.     Plaintiff repeated her disclosures, concerns and statements to the LBOE Defendants and representatives at this May 24ᵗʰ meeting.

57.     Thereafter, the retaliation would continue, and, indeed, escalate until Plaintiff was actually terminated.

58.     For example, on June 18, 2019, Plaintiff received a "draft" observation from her Supervisor, Defendant Spitz-Stein.

59.     For the first time ever, in her professional career in the Lakewood School District, Plaintiff's performance was marked as "marginal" with respect to "*Accepts Direction and Addresses concerns following accepted protocol.*"

60.     Throughout Plaintiff's entire employment with the LBOE, this was the first time she had ever scored "marginal" on any of her evaluations.

61.     Other baseless and unfounded comments were also made on the "draft" observation.

62.     The retaliation was continuing and getting worse.

63.     Plaintiff quickly met with her Supervisor to review and challenge the "draft" observation.

64.     At that meeting, Plaintiff provided proof that the findings and comments were unfounded.

65.    After Plaintiff had effectively proved that the negative markings and comments were completely unwarranted, same were removed/changed from her evaluation.

66.    A revised and a favorable evaluation for Plaintiff and the work she had been performing was provided.  This favorable evaluation was consistent with her entire work history within the District.

### (E)  Plaintiff is Wrongfully Terminated.

67.    Inexplicably, and illegally, 6 days later, on June 24, 2019, at the Board Meeting, Plaintiff was terminated.

68.    Plaintiff was terminated, despite the LBOE having, *a month earlier*, approved her reappointment as Grant Facilitator.

69.    Plaintiff did not even know that she was the one being terminated, as the termination was referenced aloud only by her Employee ID number.

70.    Defendant Supervisor Spitz-Stein subsequently advised Plaintiff: (a) that she allegedly had no knowledge of and no involvement in the termination; and (b) more importantly, expressly confirmed that Plaintiff's termination was directly connected to her "protected activity"…i.e., Plaintiff having disclosed and expressed her concerns about the LBOE Defendants' improper and unethical practice of not performing observations of Title I Grants and related services.

71.    Specifically, Defendant Malka Spitz-Stein subsequently told Plaintiff that Plaintiff's termination was *"because of what you* [Plaintiff] *said at that meeting."*

12

72.     The LBOE Defendants took adverse actions against Plaintiff in retaliation for her reporting, disclosing and objecting to what she reasonably believed were violations of important State laws, policies, regulations and ethical considerations concerning Title I Grants.

73.     Those adverse actions include changing Plaintiff's job description, preparing a negative evaluation/observation of Plaintiff, sending her a RICE Notice, and firing her after she was approved for renewal a month earlier.

74.     To date, despite numerous verbal and written requests, including the filing of a Tort Claim Notice, Plaintiff has never been advised nor notified of the LBOE or District's alleged reason for her termination.

75.     In other words, the LBOE and District have not even been able to come up with a pretext to somehow justify her termination.

76.     The illegality and retaliation are so obvious that no one can come up with even a fake reason for her termination.

77.     It is clear and obvious that Plaintiff was terminated in retaliation for her speaking out at the Public Meeting on May 19, 2019, for voicing her concerns about and disclosing the illegal and unethical practices that had been put into place to prevent and/or limit performing observations of Title I Grants and related services in the Lakewood School District.

78.     All of these retaliatory events occurred within 5 weeks of her protected activity (i.e., significant temporal proximity).

79.     Plaintiff had previously, in late July 2017 and in September 2017, had phone conversations and a meeting with two of the Defendants, wherein those Defendants made it clear to Plaintiff that they had directly interfered with 192/193 Grant personnel matters.

## COUNT I
## VIOLATION OF NEW JERSEY CONSCIENTIOUS
## EMPLOYEE PROTECTION ACT ("CEPA").

80.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

81.     Existing State and LBOE policies, as well as relevant laws, DOE regulations and policies, required that observations be performed by the LBOE with respect to all Grants - - including 192/193 Grants, IDEA Grants, and Title I Grants.

82.     Plaintiff was explicitly and specifically told by her Supervisor, Defendant Malka Spitz-Stein, to not perform observations of Title I Grants.

83.     As described more fully above, Plaintiff reported and disclosed various unlawful and/or unethical work practices to management that she reasonably believed were in violation of a law, policy, rule, or regulation.

84.     As described more fully above, Plaintiff objected to management about unlawful and/or unethical work practices that she reasonably believed were in violation of a law, policy, rule, or regulation.

85.     The unlawful termination of Plaintiff and other adverse employment acts, described above, was merely the culmination of a pattern of hostility and retaliatory animus exhibited by Defendants toward Plaintiff. This retaliation and hostility were directed at Plaintiff because she disclosed and/or objected to unlawful and/or unethical work practices of the employer that were believed to be in violation of a law, rule or regulation.

86.     Plaintiff's disclosures concerning and objections to the unlawful conduct outlined above led to the retaliatory misconduct, including her wrongful termination.

14

87.    By retaliating against and taking adverse action against Plaintiff, because she disclosed to Defendants management practices that she reasonably believed were in violation of a law, policy, rule, or regulation, Defendants have violated the Conscientious Employment Protection Act, N.J.S.A. §34:19-1, *et seq.* ("CEPA")

88.    By retaliating against and taking adverse action against Plaintiff, because she objected to activities, policies or practices which she reasonably believed were in violation of a law, policy, rule, or regulation, the LBOE Defendants have violated the Conscientious Employee Protection Act, N.J.S.A. §34-19-1, *et seq.*

89.    The wrongful actions described herein were condoned by upper management, who directly and indirectly participated in the unlawful behavior, including the retaliation and creation and maintenance of the hostile work environment. Thus, Plaintiff is entitled to punitive damages against the LBOE Defendants.

90.    As a direct and causal result of this conduct, Plaintiff has suffered severe emotional distress, pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, trauma and anxiety and other damages.

## COUNT II
## VIOLATION OF FIRST AMENDMENT 42 U.S.C. §1983
### (Interference and Retaliation)
### (Section 1983 *Monell* Municipal Liability)

91.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

92.    Plaintiff was subjected to a series of adverse employment actions, including her wrongful termination and a hostile work environment, because of things she said at a public meeting.

15

93.    Specifically, at the May 19th meeting, and again at the May 24th meeting, Plaintiff disclosed and explained that she was explicitly and specifically told by her Supervisor, Defendant Malka Spitz-Stein, to not perform observations of Title I Grants.

94.    Existing State and LBOE policies, as well as relevant laws, DOE regulations and policies, required that observations be performed by the LBOE with respect to all Grants - - including 192/193 Grants, IDEA Grants, and Title I Grants.

95.    Defendants interfered with and retaliated against her after she exercised her First Amendment rights.

96.    Plaintiff had a constitutional right to be free from retaliation as a result of her speech concerning matters of public concern (i.e., objecting to and questioning certain questionable and unethical practices by Defendants).

97.    The LBOE Defendants are liable under 42 U.S.C. §1983 because they took adverse actions against her in retaliation for her exercise of First Amendment rights.

98.    Under 42 U. S. C. §1983, Defendants violated the First Amendment by taking adverse actions against Plaintiff in retaliation for reporting, disclosing and objecting to what she reasonably believed were violations of certain important State laws, policies, regulations, and ethical considerations concerning Title I Grants.

99.    Those adverse actions, described more fully above, included the LBOE Defendants changing her job description, preparing a negative observation of Plaintiff, sending her a RICE Notice, and firing her after she was approved for renewal a month earlier.

100.    All of these retaliatory events occurred within 5 weeks of her protected activity (i.e., significant temporal proximity).

16

101.   The illegal and unconstitutional acts of Defendants constituted acts and a custom and/or policy to interfere with Plaintiff's First Amendment rights in violation of her protected constitutional rights under both the United States and the New Jersey State Constitution, including, but not limited to Article I, §6 (Freedom of Speech).

102.   Defendants, under color of state law, deprived Plaintiff of her rights, privileges and immunities secured by the Constitution of the United States by, among other things:

(a)   Denying Plaintiff her constitutional right to free exercise of speech, as well as retaliating against the Plaintiff because of her First Amendment activities; and

(b)   Engaging in a pattern of unlawful conduct designed to thwart Plaintiff's right to free speech, which includes acts of intimidation, harassment, and retaliation.

103.   Defendants interfered with or attempted to interfere with Plaintiff's exercise or enjoyment of the substantive rights, privileges and immunities secured by the Constitution of the United States by way of intimidation and retaliation.

104.   Each Individual Defendant was acting, at all relevant times, in furtherance of their duty to their employer, Defendant LBOE.

105.   Plaintiff's First Amendment rights have been generally, and without justification, violated by Defendants' actions.

106.   As a result of the interference, intimidation, retaliation, and unconstitutional conduct, Plaintiff has been damaged.

107.   In addition to the acts of interference and retaliation engaged in by the Individual Defendants, Plaintiff contends that there is a policy, pattern, and custom of preventing, interfering with and retaliating against School District employees who dare to object to or disclose

17

misconduct related to the diversion of public school monies to non-public schools.

108.   Indeed, Plaintiff is not the first employee at the Lakewood School District to experience similar acts of unlawful retaliatory hostility and discrimination.  There are several other prior lawsuits depicting very similar allegations, patterns of retaliation and unlawful conduct; those cases include *Biesiada/Miller v. LBOE, Docket No.:* OCN-L-1041-14; *D'Ambola v. LBOE,* Case No.: 3:16-cv-02735; *Tobia v. LBOE,* Case No: 16-cv-485; *Carlino v. LBOE, Yuli v. LBOE, et als,* Case No.: 3:13-cv-4617; *Carlino v. LBOE*, Docket Number: OCN-L-1414-14, and *Mostel v. LBOE, et als*, Case No:.18-cv-02096.

109.   Plaintiff, therefore, asserts §1983 claims against the LBOE on a theory of municipal liability as well, given its deliberate indifference to these unconstitutional customs and practices.

110.   Accordingly, the actions of Defendants, under current federal law, violated Plaintiff's First Amendment Rights under the Constitution of the United States and such violations are likely to continue unless enjoined by this Court.

111.   The wrongful actions described herein were condoned by upper management, who directly and indirectly participated in the unlawful behavior, including the retaliation and creation and maintenance of the hostile work environment.  Thus, Plaintiff is entitled to punitive damages against the LBOE Defendants.

112.   As a proximate result of the aforementioned acts, including violation of her civil rights, Plaintiff has been damaged, and has suffered mental distress and anguish and other proximately caused damages.

113.   As a direct and causal result of this conduct, Plaintiff has suffered severe emotional distress, pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, trauma and anxiety and other damages.

**COUNT III**
**BREACH OF EXPRESS AND IMPLIED CONTRACT**

114.   Plaintiff repeats and realleges each and every allegation contained in the foregoing Paragraphs as if set forth herein.

115.   There was a written employment contract in place between the Plaintiff and Defendants.

116.   In the alternative and in addition, through the existence of certain policies, procedures, practices, as well as through direct promises and representations through the parties' prior course of dealing, certain express and implied contractual obligations and duties existed between Plaintiff and the Defendants, specifically, as to the status of job security.   These contractual obligations and duties arose as a result of Defendants' policies, practices, as well as Defendants' specific and express promises and representations.

117.   On May 13, 2019, the LBOE Defendants explicitly approved Plaintiff for reappointment at the LBOE Board Meeting, effective July 1, 2019.

118.   On June 24, 2019, at the next LBOE Board Meeting, Defendant Laura Winters recommended to terminate Plaintiff's employment, despite having been approved for reappointment 42 days earlier.

119.   This termination took place within 36 days of Plaintiff's disclosures and objections, concerning the practice of not performing Title I Grant observations within the School District, at the May 19, 2019 Public Meeting.

120. On that same date, June 24, 2019, the LBOE Defendants approved Defendant Winters' recommendation and Plaintiff was terminated effective June 30, 2019.

121. Defendants have breached their express, implied, and/or quasi-contractual obligations owed to Plaintiff, as described above, by terminating her.

122. Defendants have further breached their implied and quasi-contractual obligations, owed to Plaintiff, through the other misconduct described above.

123. Plaintiff had every reason to realistically expect that she would not be treated in the way she was, nor that Defendants would attempt to terminate her.

124. As a result of these breaches of contract, Plaintiff has been damaged. Plaintiff seeks damages, including damages for economic losses, consequential damages, and attorneys' fees and costs of this litigation.

## COUNT IV
## BREACH OF GOOD FAITH AND FAIR DEALING

125. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

126. As with every contract, there was an implied covenant that Defendants and Plaintiff would deal with each other fairly and in good faith.

127. Defendants owed a duty of good faith and fair dealing to Plaintiff, as a result of that contractual relationship.

128. Defendants' duty of good faith and fair dealing applies to implementation and enforcement of its existing policies and practices, including its policies governing protection of whistleblowers.

129. As described above, Defendants breached this covenant and did not act in good faith nor engage in fair dealing with the Plaintiff.

130. As a result of Defendants' breach of good faith and fair dealing, Plaintiff has suffered and will continue to suffer damages to her loss and detriment.

## COUNT V
## TERMINATION IN VIOLATION OF PUBLIC POLICY

131. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

132. Plaintiff was wrongfully terminated by Defendants.

133. Her termination was a direct result of her objections to what she reasonably believed were Defendants' unlawful practices and misconduct as described above.

134. As set forth above, under the factual circumstances, Defendants' termination of Plaintiff was a direct violation of clear mandated public policies within this State.

135. Several of those public policies are set forth and described above.

136. As a result of having been discharged by Defendants, Plaintiff has suffered significant economic loss and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, severe emotional distress, trauma and anxiety and other damage.

## COUNT VI
## AIDING THE COMMISSION OF TORT- CIVIL CONSPIRACY

137. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

21

138.    Defendants, acting in concert, needed to get rid of Plaintiff because she revealed, at a Public Meeting, that the LBOE Defendants were defrauding the U.S. Department of Education concerning Title I Grants and funding for the LBOE Defendants.

139.    As set forth above, under the factual circumstances, Defendants, through active participation, aid, encouragement, or ratification of a wrong, pursued a common plan to commit a tort upon Plaintiff.

140.    As a result of Defendants' commission of this tort, Defendants are liable in damages to Plaintiff, including punitive damages.

141.    As a result of having been discharged by Defendants, Plaintiff has suffered significant economic loss and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, severe emotional distress, trauma and anxiety and other damage.

## COUNT VII
### TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP AND PROSPECTIVE ECONOMIC ADVANTAGE
### (As To Defendants Michael Inzelbuch, Laura Winters, Malka Spitz-Stein, and Adina Weisz Only)

142.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

143.    A contractual relationship between the Plaintiff and Defendant LBOE existed.

144.    Defendants Inzelbuch, Winters, Spitz-Stein, and Weisz, without privilege or justification, deliberately, maliciously, intentionally, recklessly, and/or negligently, interfered with (a) the contractual relationship; and (b) Plaintiff's prospective economic advantage.

145.    The aforesaid conduct of the Defendants was intended to interfere with Plaintiff's

employment status with the LBOE.

146.   The aforesaid conduct of the Defendants was maliciously intended to interfere with Plaintiff's economic advantage by disrupting her continued employment with the LBOE.

147.   Defendants Inzelbuch, Winters, Spitz-Stein and Weisz acted willfully and wantonly in total disregard of Plaintiff's rights, with the deliberate intent of causing economic harm to her.

148.   In the alternative, Defendants Inzelbuch, Winters, Spitz-Stein, and Weisz, negligently interfered with and attempted to interfere with Plaintiff's employment, her employment contract and her prospective economic advantage.

149.   As a proximate result of these individual Defendants' interference with Plaintiff's contractual relationship with Defendant LBOE, and her prospective economic advantage, Plaintiff has been damaged.

150.   The wrongful actions described herein were condoned by upper management, who directly and indirectly participated in the unlawful behavior, including the retaliation and creation and maintenance of the hostile work environment.  Thus, Plaintiff is entitled to punitive damages against the LBOE Defendants.

151.   As a direct and proximate result of these individual Defendants' interference described above, Plaintiff has suffered economic loss and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, severe emotional distress, trauma and anxiety and other damage.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

152.   Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth more fully at length herein.

153. Defendants engaged in intentional and outrageous conduct. Defendants' conduct was extreme and outrageous.

154. Defendants intended to engage in this conduct and also intend to cause emotional distress. Defendants' extreme and outrageous conduct toward Plaintiff was performed in deliberate disregard of the high degree of probability that emotional distress of Plaintiff would follow.

155. The wrongful actions described herein were condoned by upper management, who directly and indirectly participated in the unlawful behavior, including the retaliation and creation and maintenance of the hostile work environment. Thus, Plaintiff is entitled to punitive damages against the LBOE Defendants.

156. As a direct and proximate result of the Defendants' intentional wrongful acts and omissions, Plaintiff suffered serious injuries, including substantial emotional, and mental anguish, humiliation, embarrassment, and psychological injury, causing her pain and suffering, direct consequential economic damages, and other personal and property damages.

**WHEREFORE**, the Plaintiff asks this Court to:

a.   Enter judgment in favor of the Plaintiff and against the Defendants for damages, compensatory and consequential, including damages for emotional distress, pain and suffering, and interest (pre-and post-judgment interest) pursuant to the above laws;

b.   Enter judgment in favor of the Plaintiff and against Defendants for punitive damages pursuant to the above laws;

c.   Injunctive and remedial relief that the Court deems appropriate to address the misconduct here;

d.   Enter judgment and grant relief declaring that the actions of the Defendants described herein have violated the New Jersey Conscientious Employee Protection Act;

24

e.   Impose civil penalties against Defendants, pursuant to the New Jersey Conscientious Employee Protection Act.;

f.   Award reasonable attorney's fees, expert witness fees, and all related litigation costs to the Plaintiffs pursuant to the above laws; and

g.   Grant such other relief as may be just and proper.

PATRICK J. WHALEN, ESQ.

Dated:      June 23, 2020                By: _____
                                             Attorney for Plaintiff

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues raised herein.

PATRICK J. WHALEN, ESQ.

Dated:      June 23, 2020                By: _____
                                             Attorney for Plaintiff

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

This matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

PATRICK J. WHALEN, ESQ.

Dated:      June 23, 2020                By: _____
                                             Attorney for Plaintiff

25